**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Mariel E. Lonek</u>

    **v.**
                                Case No. 16-cv-212-PB
                                         Opinion No. 2016 DNH 212
<u>Nancy A. Berryhill, Acting</u>
<u>Commissioner, Social</u>
<u>Security Administration</u>


<u>**MEMORANDUM AND ORDER**</u>


Pursuant to 42 U.S.C. § 405(g), Mariel Lonek moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, I affirm.


## I. <u>Standard of Review</u>

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting

Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. **Background**

The parties have submitted a Joint Statement of Material Facts. That statement (doc. no. 12) is part of the court's record and will be summarized here, rather than repeated in full.

Lonek applied for disability insurance benefits ("DIB") in January of 2013, claiming that she had been disabled since March 1, 1997, as result of juvenile myoclonic epilepsy,[1]

---

[1] Juvenile myoclonic epilepsy is "an [e]pilepsy syndrome typically beginning in early adolescence, and characterized by

hypothyroidism,[2] migraine disorder, lupus anticoagulant,[3] a 2009 back injury (slipped dics), and a learning disability (difficulty with verbal instructions).  Lonek later amended the alleged onset date of her disability to April 1, 2001.

In April 2013, Dr. Burton Nault, a state agency medical consultant, performed an assessment of Lonek's physical residual functional capacity ("RFC").[4]  His RFC assessment covered the period from March 2, 2007, through June 30, 2012, and the Disability Determination Explanation form that reported his RFC assessment lists three medically determinable impairments: coagulation disorder, epilepsy, and migraine.  Dr. Nault found

_____

early morning myoclonic jerks that may progress into a generalized tonic-clonic seizure."  Stedman's Medical Dictionary 656 (28th ed. 2006).

    [2] Hypothyroidism is "[d]iminished production of thyroid hormone, leading to clinical manifestations of thyroid insufficiency, including low metabolic rate, tendency to gain weight, somnolence, and sometimes myxedema."  Stedman's, supra note 1, at 939.

    [3] Lupus anticoagulant is an "antiphospholipid antibody causing elevation in partial thromboplastin time; associated with venous and arterial thrombosis."  Stedman's, supra note 1, at 105.

    [4] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

that Lonek could: (1) lift and/or carry 10 pounds frequently and 20 pounds occasionally; (2) stand and/or walk (with normal breaks) for about six hours in an eight-hour workday; (3) sit (with normal breaks) for about six hours in an eight-hour workday; and (4) push and/or pull the same amount of weight she could lift and/or carry. He further opined that Lonek had no postural, manipulative, visual, communicative, or environmental limitations.

On May 23, 2013, Lonek saw a rheumatologist, Dr. Daniel Kunz, with whom she had previously treated in 2008. She presented with headaches. Dr. Kunz reported Lonek's subjective complaints of arthralgias and chronic headaches,[5] but also indicated that, objectively, she was "in no acute distress." Administrative Transcript (hereinafter "Tr.") 1177. He gave the following diagnosis: "Positive ANA (antinuclear antibody)."[6] Id. One week after meeting with Lonek, Dr. Kunz wrote a letter, addressed "To Whom it May Concern," that states, in full:

_____

[5] Arthralgia is "[p]ain in a joint." Stedman's, supra note 1, at 159.

[6] Antinuclear antibody is "an [antibody] showing an affinity for nuclear antigens including DNA and found in the serum of a high proportion of patients with systemic lupus erythematosus, rheumatoid arthritis, and certain collagen diseases and in some of their healthy relatives. Stedman's, supra note 1, at 103.

"Mariel Lonek is a patient of this office.  Patient should not work more than 20 hours per week.  Thank you."  Tr. 1026.

On April 18, 2014, Lonek returned to Dr. Kunz for a follow-up on her positive ANA.  She also complained of "worsening musculoskeletal pain."  Tr. 1172.  Her physical examination revealed "[w]idespread muscle and joint tenderness without joint swelling or inflammatory changes."  Id.  Dr. Kunz concluded that Lonek "does have fibromyalgia based on history, physical, and lack of features suggestive of systemic rheumatic disease."[7]  Id.

In addition to examining Lonek, Dr. Kunz completed an RFC form.  In it, he opined that Lonek: (1) could only stand for short periods of time; (2) could not sit upright for six to eight hours a day; (3) needed to lie down during the day due to pain; and (4) could walk one full city block non-stop.  He further opined that Lonek could rarely reach above her shoulders, down to waist level, or down toward the floor, but could frequently handle objects carefully and handle objects with her fingers.  He also indicated that Lonek could lift and carry five to ten pounds, but was limited in her ability to

---

[7] Fibromyalgia is "[a] common syndrome of widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbance."  Stedman's, supra note 1, at 725.

bend, squat, and kneel, due to pain.  Finally, Dr. Kunz indicated that Lonek was currently working four hours a day, three days a week, and opined that she could work up to 20 hours a week, but "could not do anything more."  Tr. 1192.

After conducting a hearing, an Administrative Law Judge ("ALJ") issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3.  The claimant has the following severe impairments: fibromyalgia; low back pain; seizures; and headaches (20 CFR 404.1520(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . . .
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally stoop, kneel, crouch, and crawl.  The claimant can frequently reach, bilaterally.  The claimant must avoid all exposure to hazardous machinery, operation and control of moving machinery, and unprotected heights.
>
> . . . .
>
> 10.  Considering the claimant's age, education, work experience, and residual functional capacity, there

are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR
404.1569 and 404.1569(a)).

Tr. 243, 244, 245, 252. Based upon his assessment of Lonek's
RFC, and a hypothetical question posed to a vocational expert
("VE") that incorporated the RFC he described in his decision,
the ALJ determined that Lonek was able to perform the jobs of
recreation attendant, companion, and price marker.

## III. Discussion

### A. The Legal Framework

To be eligible for disability insurance benefits, a person
must: (1) be insured for such benefits; (2) not have reached
retirement age; (3) have filed an application; and (4) be under
a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The only question
in this case is whether the ALJ correctly determined that Lonek
was not under a disability from April 1, 2001, through December
29, 2014.

To decide whether a claimant is disabled for the purpose of
determining eligibility for DIB, an ALJ is required to employ a
five-step sequential evaluation process. See 20 C.F.R. §
404.1520.

The steps are: 1) if the [claimant] is engaged in

substantial gainful work activity, the application is
denied; 2) if the [claimant] does not have, or has not
had within the relevant time period, a severe
impairment or combination of impairments, the
application is denied; 3) if the impairment meets the
conditions for one of the "listed" impairments in the
Social Security regulations, then the application is
granted; 4) if the [claimant's] "residual functional
capacity" is such that he or she can still perform
past relevant work, then the application is denied; 5)
if the [claimant], given his or her residual
functional capacity, education, work experience, and
age, is unable to do any other work, the application
is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that she is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  Finally,

[i]n assessing a disability claim, the [Acting
Commissioner] considers objective and subjective
factors, including: (1) objective medical facts; (2)
[claimant]'s subjective claims of pain and disability
as supported by the testimony of the claimant or other
witness; and (3) the [claimant]'s educational
background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

**B.   Lonek's Claims**

Lonek claims that the ALJ committed four reversible errors: (1) failing to properly consider her fibromyalgia; (2) improperly discounting Dr. Kunz's opinion; (3) relying upon flawed testimony from the VE at step 5; and (4) failing to consult with a medical advisor to establish the onset date of her alleged disability.[8]  None of those claims has merit.  I consider each in turn.

1.   Consideration of Fibromyalgia

Lonek begins by claiming that "[a]t Step 2 of the analysis, the [Acting] Commissioner finds that plaintiff has several

---

[8] Claimant's memorandum of law also includes a section titled: "The Commissioner's Decision and Findings were Not Supported by the Record as a Whole or Substantial Evidence." Doc. no. 7, at 7.  But rather than identifying any particular finding that she claims to have been inadequately supported, claimant merely lists various pieces of raw medical evidence and subjective complaints that she says the ALJ should have considered but did not.  A mere laundry list of allegedly overlooked evidence is no substitute for an argument that identifies a particular legal error that allegedly resulted from the ALJ's failure to consider a particular piece of evidence. For example, in Taylor v. Schweiker, 739 F.2d 1240 (7th Cir. 1984), a case on which claimant relies, the court pointed out the ALJ's "errors in dealing with the material contained in the record," id. at 1243, in the context of remanding the case because it was unable to conclude that the ALJ's step 2 finding was supported by substantial evidence, see id. at 1242.

severe impairments, including but not limited to fibromyalgia; however [he] does not further evaluate or develop the evidence of the plaintiff's medically determinably impairment of fibromyalgia pursuant to SSR 12-2p."  Cl.'s Mot., doc. no. 7, at 5 (citing Social Security Ruling ("SSR") 12-2P, 2012 WL 3104869 (S.S.A. July 25, 2012)).  Lonek's first claim has much in common with the claim I found to be meritless in Diaz v. U.S. Social Security Administration, Acting Commissioner, No. 14-cv-137-PB, 2015 WL 5331285 (D.N.H. Sept. 14, 2015).  There, as here, the ALJ found fibromyalgia to be a severe impairment at step 2, see id. at *2, and the claimant "offer[ed] no specific explanation of how the ALJ actually deviated from SSR 12-2P, providing instead only vague and conclusory assertions that the ALJ somehow failed to 'properly consider the symptoms of fibromyalgia as described in SSR 12-2p,'" id. (quoting the record).  Because Lonek has not made "any showing that the [ALJ's] decision is materially inconsistent with the regulation," id. (citing Anderson v. Colvin, No. 14-cv-15-LM, 2014 WL 5605124, at *1, *11 (D.N.H. Nov. 4, 2014)), her first claim fails.

    2.   Evaluation of Dr. Kunz's Opinion

Lonek's second claim is somewhat difficult to parse.  She

frames that claim this way:

> The ALJ did not consider opinions and statements from all medical sources; rather he relied on sources that did not have a relationship with the plaintiff, he gave weight only to selective records without any or with defective reasoning, he relied on defective evidence and/or ignored evidence. The ALJ improperly discounted the opinion of plaintiff's treatment providers who have the most familiarity with the plaintiff and her medical conditions. Dr. Kunz opined that plaintiff has fibromyalgia after ruling out numerous other diagnoses. That opinion along with other provider's [sic] references to fibromyalgia and pain throughout the record go largely ignored by the ALJ, and there is no explanation provided for the reasons the Decision ignored this evidence by failing to fully evaluate and develop this diagnosis and evidence, much less even mention some of the evidence.

Cl.'s Mot., doc. no. 7, at 7. While the precise nature of Lonek's claim is not perfectly clear, I construe it to be a claim that the ALJ failed to give proper weight to Dr. Kunz's opinion.

Lonek appears to claim that the ALJ erred by largely ignoring Dr. Kunz's opinion that she had fibromyalgia. But, at step 2, the ALJ found that claimant's fibromyalgia was a severe impairment. It is thus difficult to see how he ignored Dr. Kunz's opinion. Moreover, if Lonek's actual claim is that rather than ignoring Dr. Kunz's diagnosis of fibromyalgia, the ALJ erred by failing to give the proper amount of weight to the functional limitations Dr. Kunz identified in his RFC form, that claim fails as well.

Generally speaking, the Social Security Administration, and by an extension, an ALJ, should give more weight to medical opinions from a claimant's treating physician(s) than to the opinions of medical sources who have merely examined a claimant, and should give the least amount weight to the opinions of sources who have neither treated nor examined a claimant.  See 20 C.F.R. § 404.1527(c).  To that end, the regulations provide that

> [i]f [an ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).  Because the ALJ did not give controlling weight to Dr. Kunz's opinion, he was obligated to determine the amount of weight to give that opinion by considering: (1) the length of Lonek's treatment relationship with Dr. Kunz and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of Dr. Kunz's opinion; (4) the consistency of that opinion with the record as a whole; (5) Dr. Kunz's medical specialization; and (6) any other factors that may support or contradict the opinion.  See 20 C.F.R. §§ 404.1527(c)(2)-(6).

In his decision, the ALJ considered both Dr. Kunz's twice-expressed opinion that Lonek could only work 20 hours per week and the limitations Dr. Kunz identified in his RFC form.  The ALJ gave little weight to those opinions because: (1) Dr. Kunz provided no explanation for his 20-hour-per week limitation when he first gave that opinion in May of 2013; (2) the limitations in the RFC form "appear[ed] to be based largely on subjective complaints of pain and fatigue that are not corroborated elsewhere in the treatment records," Tr. 251; and (3) at a physical examination several months after Dr. Kunz completed his RFC form, Lonek did not report symptoms consistent with Dr. Kunz's limitations, and those limitations were also not supported by the objective findings resulting from that subsequent examination.  By identifying deficiencies in the areas of supportability and consistency, the ALJ fulfilled his obligation, under 20 C.F.R. § 404.1527(c)(2), to provide good reasons for his decision to give little weight to Kunz's opinion.

The applicable regulations provide that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that opinion."  20 C.F.R. §

14

404.1527(c)(3).  Dr. Kunz based the functional limitations he identified on diagnoses of fibromyalgia and back pain.  When asked to "state all clinical findings and any medical test results and/or laboratory results," Tr. 1188, Dr. Kunz said only this: "widespread joint [and] muscle tenderness," id.  With respect to Dr. Kunz's first diagnosis, I recognize that "musculoskeletal and neurological examinations are normal in fibromyalgia patients, and [that] there are no laboratory abnormalities."  Johnson v. Astrue, 597 F.3d 409, 410 (1st Cir. 2009) (quoting Harrison's Principles of Internal Medicine 2056 (16th ed. 2005)).  I also acknowledge that "'a patient's report of complaints, or history, is an essential diagnostic tool' in fibromyalgia cases, and a treating physician's reliance on such complaints 'hardly undermines his opinion as to [the patient's] functional limitations.'"  Johnson, 597 F.3d at 412 (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)).  But Dr. Kunz did not report subjective complaints consistent with the diagnostic criteria described in SSR 12-2P.  With respect to Dr. Kunz's second diagnosis, back pain, he identified no medical signs or laboratory findings that link that condition to the functional limitations he identified.  Thus, I conclude

that lack of supportability is a sufficient reason for the ALJ's decision to discount Dr. Kunz's opinion.

The applicable regulations also provide that "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4).  The ALJ observed that Dr. Kunz's opinion was inconsistent with the symptoms claimant reported to her neurologist during an office visit about five months after Dr. Kunz rendered his opinion.  And, indeed, the note generated by that office visit does not document symptoms consistent with Dr. Kunz's opinion, and it does not even mention fibromyalgia under the heading "problems" or the heading "diagnoses."  For her part, claimant asserts that "other provider's [sic] references to fibromyalgia and pain throughout the record go largely ignored by the ALJ," Cl.'s Mot., doc. no. 7, at 7, but she does not identify any particular reference that, in her view, is consistent with Dr. Kunz's opinion.[9]  As with the question of

_____

[9] In a section of her motion titled "The Commissioner's Decision and Findings Were Not Supported by the Record as a Whole or Substantial Evidence," doc. no. 7, at 7, claimant lists several dozen references to various types of pain that appear in her medical records, but the only references to fibromyalgia she cites are those in Dr. Kunz's April 18, 2014, office note and RFC form.

supportability, inconsistency with the record as a whole is also a sufficient reason for discounting Dr. Kunz's opinion.

To summarize, substantial evidence supports the ALJ's determination that Dr. Kunz's opinion was entitled to little weight because it was both inadequately supported and inconsistent with the record as a whole.

### 3. Evidence from the VE

Lonek's third claim is that the ALJ erred in relying on the testimony of the VE because the VE's "testimony and evidence did not identify jobs that were specifically available during the relevant time period, from the alleged date of onset in 2001 to the date last insured of 2015." Cl.'s Mot., doc. no. 7, at 10. On October 2, 2014, which falls between claimant's alleged onset date (April 1, 2001) and her date last insured (June 30, 2015), the VE testified that a person with claimant's RFC could perform the jobs of recreation attendant, companion, and price marker. He further explained that a substantial number of each of those jobs existed at that time in New Hampshire and in the nation as a whole.[10] Thus, notwithstanding claimant's assertion to the

---

[10] Specifically, the VE testified that there were 150 recreation attendant jobs in New Hampshire and 30,000 nationally, 120 companion jobs in New Hampshire and 31,000 nationally, and 160 price marker jobs in New Hampshire and

contrary, the VE did identify jobs that were available during the relevant time period. Moreover, if Lonek's actual claim is that the ALJ's decision is not supported by substantial evidence because the VE's testimony only applies to a single point rather than some span of time, she provides no legal authority for that proposition, and I am aware of none. Accordingly, Lonek's third argument is without merit.

### 4. Lack of Consultation with a Medical Advisor

Lonek's final claim is that the ALJ committed reversible error by failing to consult a medical advisor to aid him in establishing an onset date for her disability. In claimant's words:

> This matter involves an alleged onset date of April 1, 2001, more than fifteen (15) years ago. In matters such as this where the plaintiff must establish disability by a date far in the past and where there is a lack of adequate medical evidence as of the plaintiff's onset date, SSR 83-20 applies and requires the ALJ to infer an onset date and call on a medical advisor to assist in doing so.
>
> Throughout the Decision, there is little reference to the plaintiff's fibromyalgia, and the evidence available prior to or around the plaintiff's date last insured is arguably ambiguous.
>
> . . . .
>
> Further, the record in this matter does not

33,000 nationally. See Tr. 176-77.

> unambiguously establish that the plaintiff is not
> disabled as of her date last insured. . . .
>
> As this court held in the <u>Fischer</u> case, at the
> very least, the record in this matter does not
> unambiguously establish that Ms. Lonek was not
> disabled as of her date last insured; thus, the ALJ is
> required to consult with a medical advisor to assist
> in establishing an onset date. <u>Id.</u> The ALJ's refusal
> to call on the services of a medical advisor and
> comply with SSR 83-20 was in error and warrants
> reversal of the Decision.

Cl.'s Mot., doc. no. 7, at 11-12 (citing SSR 83-20, 1983 WL
31249 (S.S.A. 1983); Fischer v. Colvin, No. 13-cv-00463-PB, 2014
WL 5502922 (D.N.H. Oct. 30, 2014), vacated by 831 F.3d 31
(2016)). Respondent argues that

> [b]ecause the ALJ . . . made an express finding that
> Plaintiff was not disabled as of the date of his
> decision – which was during the period of insurability
> – determining whether disability began before the
> claimant's [date last insured] was simply not an issue
> in this case [and] because the ALJ . . . made an
> express finding that Plaintiff was not disabled as of
> the date of his decision, SSR 83-20 has no application
> here.

Resp't's Mem. of Law, doc. no. 10-1, at 8-9. Respondent has the
better argument.

Lonek's claim appears to be rooted in her allegation that
she became disabled on April 1, 2001, and her theory that the
ambiguity of the medical records from that time required the ALJ
to consult with a medical advisor to establish an onset date.

But unlike the claimant in Fischer, who applied for DIB in 2012, who had a date last insured of March 31, 1998, and who claimed to have become disabled on October 31, 1995, see 831 F.3d at 32, Lonek was insured for DIB for approximately six months after the ALJ rendered his decision.  Thus, I am hard pressed to see how Lonek had any need to establish that she became disabled in 2001.  Not only does it appear that Lonek had no need to establish a 2001 onset date, it is not at all clear how she could possibly benefit from doing so, because even if she were to establish that onset date, she could not collect benefits for any disability she had before January 29, 2012, which is 12 months prior to the date on which she filed her application.  See 20 C.F.R. § 404.621(c) (establishing 12-month window for retroactive disability insurance benefits).[11]  In sum, under the

_____

[11] A claimant can receive benefits for a period of disability in the past that has ended.  See 20 C.F.R. § 404.320(b).  But given the facts of this case, Lonek would not qualify for such benefits.  The ALJ determined that Lonek has not been under a disability at any time between April 1, 2001, and January 29, 2014.  Even assuming that there is not substantial evidence for a lack of disability for that entire span, Dr. Nault's RFC assessment is substantial evidence supporting a finding that Lonek has not been disabled since March 2, 2007.  Even if Lonek could establish a closed period of disability that ended prior to that date, any such disability would have ended too long ago for Lonek to collect benefits for it.  See 20 C.F.R. § 404.320(b).

circumstances of this case, claimant's invocation of SSR 83-20 appears to be a red herring.

That conclusion is further demonstrated by the argument in Lonek's motion.  While she speaks of her need to "establish disability by a date far in the past," Cl.'s Mot., doc. no. 7, at 11, she goes on to assert that "the evidence available prior to or around [her] date last insured is arguably ambiguous," id. at 12.  The problem is that her date last insured was not far in the past; she was still insured when the ALJ made his decision. Thus, in reality, her claim is not that the ALJ erred by failing to consult with a medical advisor to infer an onset date but, rather, that he erred by failing to consult with a medical advisor to help him resolve conflicts in the evidence before him regarding whether claimant was disabled at the time he rendered his decision.  There is nothing in SSA 83-20 that requires an ALJ confronted with conflicting evidence such as the two RFC assessments in this case to consult with a medical advisor to help him or her resolve the conflict.  Rather, with respect to determining whether a claimant is disabled, ALJs are expressly empowered to resolve conflicts in the evidence.  See Irlanda Ortiz, 955 F.2d at 769.

The bottom line is this.  While Lonek claims to have become

disabled in 2001, there is nothing about the circumstances of this case that compelled the ALJ to consult with a medical advisor.  For that reason, Lonek's fourth claim fails.

## IV. __Conclusion__

Because the ALJ committed neither a legal nor a factual error in evaluating Lonek's claim, see Manso-Pizarro, 76 F.3d at 16, her motion for an order reversing the Acting Commissioner's decision, doc. no. 7, is denied, and the Acting Commissioner's motion for an order affirming her decision, doc. no. 10, is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


June 12, 2017

cc:  Christine Woodman Casa, Esq.
     Robert J. Rabuck, Esq.
     T. David Plourde, Esq.